FARHAD NOVIAN (SBN 118129)
farhad@novianlaw.com
SHARON RAMINFARD (SBN 278548)
sharon@novianlaw.com
MICHAEL O'BRIEN (State Bar No. 277244)
michaelo@novianlaw.com
NOVIAN & NOVIAN LLP
1801 Century Park East, Suite 1201
Los Angeles, California 90067
Telephone:   (310) 553-1222
Facsimile     (310) 553-0222

Attorney for Plaintiff, DMH Aesthetics, LLC

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DMH Aesthetics, LLC, a California limited liability company, | Case No.: |
| Plaintiff, | **PLAINTIFF'S COMPLAINT FOR:** |
| vs. | 1.    Copyright Infringement |
| | 2.    Vicarious and/or Contributory Copyright Infringement |
| Vanity Mask, An Unknown California Business Entity; Mia Smyth, An Individual, Lux Light Therapy, An Unknown California Business Entity; Ari Aghajani, An Individual; Luma Aesthetics, A Business Entity, Form Unknown; Michea Crawford, An Individual; Lulu Youth, A Colorado Business Entity, Form Unknown; Tim Jacobs, An Individual; Social Skin Co., An Australian Business Entity, Form Unknown; Samantha Scott, An Individual; Therashield, A California Business Entity, Form Unknown; Trygloo, an unknown business entity, form unknown, and DOES 1 through 50, inclusive, | 3.    Trademark Infringement |
| | 4.    Trademark Dilution |
| | 5.    Trade Dress Infringement |
| | 6.    Trade Dress Dilution |
| | 7.    Unfair Competition |
| | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff, DMH Aesthetics, LLC ("Plaintiff"), by and through its undersigned counsel, complaining of defendants Vanity Mask, a California business entity, form unknown ("Vanity Mask"); Mia Smyth, an individual ("Smyth"), Lux Light Therapy, a California business entity, form unknown ("Lux Light Therapy") ; Ari Aghajani, an individual ("Aghajani"); Luma Aesthetics, a business entity, form unknown ("Luma Aesthetics"); Michea Crawford, an individual ("Crawford"); Lulu Youth, a Colorado business entity, form unknown ("Lulu Youth"); Tim Jacobs, an individual ("Jacobs"); Social Skin Co., a business entity, form unknown ("Social Skin Co."); Samantha Scott, an individual ("Scott"); Therashield, a California business entity, form unknown ("Therashield"); Trygloo, a unknown business entity, form unknown ("Trygloo"), and DOES 1 through 50, inclusive (collectively, "Defendants"), respectfully alleges as follows:

## NATURE OF THE ACTION

1.    Plaintiff creates and obtains rights to unique two-dimensional non-functional artworks which are transacted primarily in and through the apparel industry.  Plaintiff owns these designs in exclusivity and exploits these designs for profit by selling products bearing the designs or entering into licensing agreements for sale or display by third parties. Defendants, and each of them, have knowingly and intentionally used one such design in the production of unauthorized goods which infringe Plaintiff's copyrights.

## JURISDICTION AND VENUE

2.    The Court has original subject matter jurisdiction over Plaintiff's federal claims arising under the Copyright Act of 1976, Title 17 U.S.C., § 101 et seq. under 28 U.S.C. § 1331, 1338 (a) and (b).

3.    This Court has personal jurisdiction over the Defendants because the events or omissions giving rise to the claim occurred, the tortuous acts occurred, and a substantial part of the injury took place and continues to take place, in this judicial district and/or each of the defendants can be found in this judicial district.

4.      Venue is proper in the United States District Court for the Central District of California pursuant to 28 U.S.C §§ 1391(b), 1391(c), and 1400(a) on information and belief that: (a) this is a judicial district in which a substantial part of the events giving rise to the claims occurred the tortuous acts occurred, and a substantial part of the injury took place and continues to take place; and (b) this is a judicial district in which Defendants may be found.

## **THE PARTIES**

5.      Plaintiff DMH Aesthetics, LLC ("Plaintiff") is a California limited liability company with its principal place of business in the County of Los Angeles, State of California.

6.      Plaintiff is informed and believes, and thereon alleges, that Defendant Vanity Mask, is, and at all relevant times was, doing business within the jurisdiction of this Court.  Upon information and belief, Vanity Mask's principal place of business is in Los Angeles, California.

7.      Plaintiff is informed and believes, and thereon alleges, that Defendant Smyth, is an individual that is, and at all relevant times was, living and doing business within the jurisdiction of this Court.  Upon information and belief, Smyth's principal place of residence is in Los Angeles, California. Upon information and belief, Smyth is, and at all relevant times was, the principal and/or authorized agent of Vanity Mask.

8.      Plaintiff is informed and believes, and thereon alleges, that Defendant Lux Light Therapy is, and at all relevant times was, doing business within the jurisdiction of this Court.  Upon information and belief, Lux Light Therapy's principal place of business is in Los Angeles, California.

9.      Plaintiff is informed and believes, and thereon alleges, that Defendant Aghajani, is an individual that is, and at all relevant times was, living and doing business within the jurisdiction of this Court.  Upon information and belief, Aghajani's principal place of residence is in Los Angeles, California. Upon

1  information and belief, Aghajani is, and at all relevant times was, the principal and/or
2  authorized agent of Lux Light Therapy.

3      10.    Plaintiff is informed and believes, and thereon alleges, that Defendant
4  Luma Aesthetics is, and at all relevant times was, doing business within the
5  jurisdiction of this Court.

6      11.    Plaintiff is informed and believes, and thereon alleges, that Defendant
7  Crawford, is an individual that is, and at all relevant times was, doing business within
8  the jurisdiction of this Court. Upon information and belief, Crawford is, and at all
9  relevant times was, the principal and/or authorized agent of Luma Aesthetics.

10     12.    Plaintiff is informed and believes, and thereon alleges, that Defendant
11 Lulu Youth is, and at all relevant times was, doing business within the jurisdiction
12 of this Court.  Upon information and belief, Lulu Youth's principal place of business
13 is in Denver, Colorado.

14     13.    Plaintiff is informed and believes, and thereon alleges, that Defendant
15 Jacobs is an individual that is, and at all relevant times was, living and doing business
16 within the jurisdiction of this Court.  Upon information and belief, Jacobs' principal
17 place of residence is in Denver, Colorado. Upon information and belief, Jacobs is
18 the principal and/or authorized agent of Lulu Youth.

19     14.    Plaintiff is informed and believes, and thereon alleges, that Defendant
20 Social Skin Co. is, and at all relevant times was, doing business within the
21 jurisdiction of this Court.  Upon information and belief, Lulu Youth's principal place
22 of business is in Harrisdale, Australia.

23     15.    Plaintiff is informed and believes, and thereon alleges, that Defendant
24 Scott is an individual that is, and at all relevant times was, living and doing business
25 within the jurisdiction of this Court.  Upon information and belief, Scott's principal
26 place of residence is in Harrisdale, Australia. Upon information and belief, Jacobs is
27 the principal and/or authorized agent of Social Skin Co.

28     16.    Plaintiff is informed and believes, and thereon alleges, that Defendant

Therashield is, and at all relevant times was, doing business within the jurisdiction of this Court. Upon information and belief, Therashield's principal place of business is in Los Angeles, California.

17. Plaintiff is informed and believes, and thereon alleges, that Defendant Trygloo is, and at all relevant times was, doing business within the jurisdiction of this Court.

18. The true names or capacities, whether individual, corporate, associate or otherwise, of Defendants Does 1 through 50, inclusive, are unknown to Plaintiff, which therefore sues said defendants by such fictitious names. Plaintiff is informed and believes and based thereon alleges that each defendant herein designated as a Doe is responsible in some manner for the events, acts and happenings referred to herein, and, accordingly, Plaintiff will amend this complaint to show such true names and capacities when the same have been ascertained.

19. Upon information and belief, at all times mentioned herein, Defendants Vanity Mask and Smyth (collectively, the "Vanity Mask Defendants") and each of them, were agents, servants, representatives, joint venturers, partners, alter egos and/or employees of said defendants, and in doing the things hereinafter alleged, were acting within the course and scope of their authority as agents, servants, representatives, joint venturers, partners, alter egos and/or employees and with the permission and consent of said defendants, each said defendant having ratified the acts of the other.

20. Upon information and belief, the Vanity Mask Defendants are the alter egos of each other, are characterized by a unity of interest in ownership and control among themselves such that any individuality and separateness between them have ceased; that each is, and at all relevant times was, a mere shell instrumentality and conduit through which the other said defendants carried on their business; and that Vanity Mask Defendants completely controlled, dominated, managed, and operated each other's business to such an extent that any individuality or separateness of the

Vanity Mask Defendants does not and did not exist, and intermingled the assets of each to suit the convenience of themselves in order to evade payment of obligations and legal liability.

21. Upon information and belief, adherence to the fiction of separate existence of  the Vanity Mask Defendants as entities distinct and separate from one another would promote injustice in that some of these said defendants have used the other said defendants as a mere shell, simply to transfer the earnings of one another while attempting to avoid legal liability.  As such, Plaintiff is informed and believes, and on such information and belief alleges, that the Vanity Mask Defendants are the alter egos of each other and are responsible in damages to Plaintiff to the full extent of each other's liability.

22. Upon information and belief, at all times mentioned herein, Defendants Lux Light Therapy and Aghajani, (collectively, the "Lux Light Therapy Defendants") and each of them, were agents, servants, representatives, joint venturers, partners, alter egos and/or employees of said defendants, and in doing the things hereinafter alleged, were acting within the course and scope of their authority as agents, servants, representatives, joint venturers, partners, alter egos and/or employees and with the permission and consent of said defendants, each said defendant having ratified the acts of the other.

23. Upon information and belief, the Lux Light Therapy Defendants are the alter egos of each other, are characterized by a unity of interest in ownership and control among themselves such that any individuality and separateness between them have ceased; that each is, and at all relevant times was, a mere shell instrumentality and conduit through which the other said defendants carried on their business; and that the Lux Light Therapy Defendants completely controlled, dominated, managed, and operated each other's business to such an extent that any individuality or separateness of the Lux Light Therapy Defendants does not and did

not exist, and intermingled the assets of each to suit the convenience of themselves in order to evade payment of obligations and legal liability.

24.    Upon information and belief, adherence to the fiction of separate existence of the Lux Light Therapy Defendants as entities distinct and separate from one another would promote injustice in that some of these said defendants have used the other said defendants as a mere shell, simply to transfer the earnings of one another while attempting to avoid legal liability.  As such, Plaintiff is informed and believes, and on such information and belief alleges, that the Lux Light Therapy Defendants are the alter egos of each other and are responsible in damages to Plaintiff to the full extent of each other's liability.

25.    Upon information and belief, at all times mentioned herein, Defendants Lulu Youth and Jacobs (collectively, the "Lulu Youth Defendants") and each of them, were agents, servants, representatives, joint venturers, partners, alter egos and/or employees of said defendants, and in doing the things hereinafter alleged, were acting within the course and scope of their authority as agents, servants, representatives, joint venturers, partners, alter egos and/or employees and with the permission and consent of said defendants, each said defendant having ratified the acts of the other.

26.    Upon information and belief, the Lulu Youth Defendants are the alter egos of each other, are characterized by a unity of interest in ownership and control among themselves such that any individuality and separateness between them have ceased; that each is, and at all relevant times was, a mere shell instrumentality and conduit through which the other said defendants carried on their business; and that Lulu Youth Defendants completely controlled, dominated, managed, and operated each other's business to such an extent that any individuality or separateness of the Lulu Youth Defendants does not and did not exist, and intermingled the assets of each to suit the convenience of themselves in order to evade payment of obligations and legal liability.

27.     Upon information and belief, adherence to the fiction of separate existence of the Lulu Youth Defendants as entities distinct and separate from one another would promote injustice in that some of these said defendants have used the other said defendants as a mere shell, simply to transfer the earnings of one another while attempting to avoid legal liability.  As such, Plaintiff is informed and believes, and on such information and belief alleges, that the Lulu Youth Defendants are the alter egos of each other and are responsible in damages to Plaintiff to the full extent of each other's liability.

28.     Upon information and belief, at all times mentioned herein, Defendants Social Skin Co. and Scott (collectively, the "Social Skin Co. Defendants") and each of them, were agents, servants, representatives, joint venturers, partners, alter egos and/or employees of said defendants, and in doing the things hereinafter alleged, were acting within the course and scope of their authority as agents, servants, representatives, joint venturers, partners, alter egos and/or employees and with the permission and consent of said defendants, each said defendant having ratified the acts of the other.

29.     Upon information and belief, the Social Skin Co. Defendants are the alter egos of each other, are characterized by a unity of interest in ownership and control among themselves such that any individuality and separateness between them have ceased; that each is, and at all relevant times was, a mere shell instrumentality and conduit through which the other said defendants carried on their business; and that Social Skin Co. Defendants completely controlled, dominated, managed, and operated each other's business to such an extent that any individuality or separateness of the Social Skin Co. Defendants does not and did not exist, and intermingled the assets of each to suit the convenience of themselves in order to evade payment of obligations and legal liability.

30.     Upon information and belief, adherence to the fiction of separate existence of the Social Skin Co. Defendants as entities distinct and separate from

one another would promote injustice in that some of these said defendants have used the other said defendants as a mere shell, simply to transfer the earnings of one another while attempting to avoid legal liability.  As such, Plaintiff is informed and believes, and on such information and belief alleges, that the Social Skin Co. Defendants are the alter egos of each other and are responsible in damages to Plaintiff to the full extent of each other's liability.

31.    Upon information and belief, at all times mentioned herein, Defendants Luma Aesthetics and Crawford (collectively, the "Luma Aesthetics Defendants") and each of them, were agents, servants, representatives, joint venturers, partners, alter egos and/or employees of said defendants, and in doing the things hereinafter alleged, were acting within the course and scope of their authority as agents, servants, representatives, joint venturers, partners, alter egos and/or employees and with the permission and consent of said defendants, each said defendant having ratified the acts of the other.

32.    Upon information and belief, the Luma Aesthetics Defendants are the alter egos of each other, are characterized by a unity of interest in ownership and control among themselves such that any individuality and separateness between them have ceased; that each is, and at all relevant times was, a mere shell instrumentality and conduit through which the other said defendants carried on their business; and that Luma Aesthetics Defendants completely controlled, dominated, managed, and operated each other's business to such an extent that any individuality or separateness of the Luma Aesthetics Defendants does not and did not exist, and intermingled the assets of each to suit the convenience of themselves in order to evade payment of obligations and legal liability.

33.    Upon information and belief, adherence to the fiction of separate existence of the Luma Aesthetics Defendants as entities distinct and separate from one another would promote injustice in that some of these said defendants have used the other said defendants as a mere shell, simply to transfer the earnings of one

another while attempting to avoid legal liability. As such, Plaintiff is informed and believes, and on such information and belief alleges, that the Luma Aesthetics Defendants are the alter egos of each other and are responsible in damages to Plaintiff to the full extent of each other's liability.

34.     Upon information and belief, the Vanity Mask Defendants, Lux Light Therapy Defendants, Luma Aesthetics Defendants, Lulu Youth Defendants, Social Skin Co. Defendants, and Therashield, and each of them, have filed counter notices in response to Plaintiff's DMCA take down notices and have thereby agreed to the jurisdiction of this Court.

## FACTUAL BACKGROUND

35.     Plaintiff manages a clinic specializing in cosmetic and aesthetic treatments for high-profile clientele and celebrities.

36.     In connection with its business, in or about late 2018, Plaintiff designed a unique face shield with distinctive built in LED colored lights ("Plaintiff's Shield"):

 

37.     Plaintiff's Shield has special settings that cause the display of three different colors of lights (red, blue, and amber).

38.     In February 2019, Plaintiff began advertising, displaying, and selling Plaintiff's Shield in commerce throughout the United States including, but not limited to, on Plaintiff's website, dmhaesthetics.com, on its social media pages, in its clinics, and through online advertisements.

**PLAINTIFF'S INTELLECTUAL PROPERTY OWNERSHIP**

39.     Plaintiff owns a registered copyright, and had owned prior to the infringing acts complained of herein, a copyright in the following original design for Plaintiff's Shield it has internally designated as "DMH LED Light Shield" (the "Design"):



40.     Plaintiff owns a copyright registration for the Shield Design issued by the United States Copyright Office, bearing Registration Number VA 2-223-199.

41.     In addition, Plaintiff owns a registered copyright, and had owned prior to the infringing acts complained of herein, a copyright in the following original packaging design it has internally designated as "DMH Light Shield Box" (the "Packaging"):

///

///

///

///

///



42.     Plaintiff owns a copyright registration for the Packaging, issued by the United States Copyright Office, bearing Registration Number VA 2-210-065. (The copyrights in the Design and the Packaging are referred to herein as the "Copyrights").

43.     Since February 2019, Plaintiff's Shield was advertised, displayed and sold in connection with Plaintiff's various trademarks including, without limitations, its Design and its DMH AESTHETICS word mark and stylized mark (in gold foil) (the "Trademarks").

44.     Plaintiff's Design and DMH AESTHETICS marks appear repeatedly on Plaintiff's product packaging, websites, social media pages, and other marketing and advertising materials for Plaintiff's Shield.

45.     The Design is displayed in various colors and is most frequently used in a very specific pinkish red tone. For instance, the Design is prominently displayed in the red tone on the front of each box for Plaintiff's Shield. The Design is also commonly displayed in the three colors red, blue, and yellow, side-by-side.

Examples of the various displays of Plaintiff's Design can be seen on the Packaging, as registered by the Copyright Office.

46.    In addition, Plaintiff has continuously used its trade dress including, but not limited to, the trade dress in the distinctive design of Plaintiff's Shield and Plaintiff's product packaging (the "Trade Dress") as a source identifier for Plaintiff's goods and services, since at least as early as February 2019. Specifically, Plaintiff's Trade Dress in the Shield includes nonfunctional elements, such as, without limitation, the manner in which the lights appear in a horizontal manner from one side to the other, the shape, design and coloring of the white bar that sits above the eye area and the nose piece, and the shape of the eye are that is created by the surrounding elements.

47.    Since February 2019, Plaintiff has continuously sold, licensed, or otherwise exploited Plaintiff's Shield to Plaintiff's clients and third-party retailers.

48.    Plaintiff's Shield quickly gained popularity and fame as numerous celebrities posted pictures and videos displaying Plaintiff's Shield on their social media pages. The pictures and videos posted by these celebrities often also displayed the Packaging or other product packaging for Plaintiff's Shield, making Plaintiff's Copyrights, Trademarks, and Trade Dress clearly visible by the viewers.

49.    On or about April 20, 2020, Plaintiff entered into an exclusive third-party retailer agreement, granting the retailer the right to market, promote and exclusively sell Plaintiff's Shield.

50.    Soon thereafter, Plaintiff's Shield gained even more success and fame, as more celebrities (some with over 150 million followers) began posting pictures and videos of Plaintiff's Shield and/or Packaging on their personal Instagram and other social media pages.

## DEFENDANTS' INFRINGING CONDUCT

51.    In or about July 2020, Plaintiff learned that the Vanity Mask Defendants were unlawfully selling face shields that looked identical to or

otherwise confusingly similar to Plaintiff's Shield ("Infringing Shields"). The Vanity Mask Defendants have displayed, marketed, and offered Infringing Products on its websites and social media pages (namely Instagram) including but not limited to their web domain, *www.vanity-mask.com/*, Facebook page, *www.facebook.com/ledvanitymask/*, and Instagram page, *https://www.instagram.com/vanity_mask/*.

52.    In or about August 2020, Plaintiff learned that the Lux Light Therapy Defendants were unlawfully selling Infringing Shields. The Lux Light Therapy Defendants displayed, marketed, and offered Infringing Products on their websites and social media pages (namely Instagram) including but not limited to their web domain, *www.luxlighttherapy.com/*, Facebook page, *www.facebook.com/LuxLightTherapy*, and Instagram page, *www.instagram.com/luxlighttherapy/*.

53.    In or about October 2020, Plaintiff learned that the Luma Aesthetics Defendants were unlawfully selling Infringing Shields. The Luma Aesthetics Defendants displayed, marketed, and offered Infringing Products on their websites and social media pages (namely Instagram) including but not limited to their web domain, *www.luma-aesthetics.com/*, Facebook page, *www.facebook.com/ luma.aesthetics/*, and Instagram page, *www.instagram.com/ luma.aesthetics.shield/*

54.    In or about December 2020, Plaintiff learned that the Trygloo was unlawfully selling Infringing Shields. Trygloo displayed, marketed, and offered Infringing Products on its websites and social media pages (namely Instagram) including but not limited to their web domain, *www.trygloo.com/*, Facebook page, *www.facebook.com/    Gloo-102860074999376/*,    and    Instagram    page, *www.instagram.com/trygloo/*

55.    In or about January 2021, Plaintiff learned that Therashield was unlawfully selling Infringing Shields. Therashield displayed, marketed, and offered Infringing Products on their websites and social media pages (namely Instagram)

including but not limited to its web domain, *www.therashield.la/*, Facebook page, *www.facebook.com/therashield-105067818090315/*, and Instagram page, *www.instagram.com/therashield/*.

56.    In or about January 2021, Plaintiff learned that the Lulu Youth Defendants were unlawfully selling face shields that looked identical to or otherwise confusingly similar to Plaintiff's Shield ("Infringing Shields"). The Lulu Youth Defendants have displayed, marketed, and offered Infringing Products on its websites and social media pages (namely Instagram) including but not limited to their web domain, *www.luluyouth.com/*, Facebook page, and Instagram page.

57.    In or about January 2021, Plaintiff learned that the Social Skin Co. Defendants were unlawfully selling Infringing Shields. The Social Skin Co. Defendants displayed, marketed, and offered Infringing Products on their websites and social media pages (namely Instagram) including but not limited to the Social Skin Co. Defendants web domain, *www.socialskinco.com/*, Facebook page, *www.facebook.com/socialskincoau/*, and Instagram page, *www.instagram.com/socialskincoau/*.

58.    Not only did Defendants, and each of them, unlawfully display and sell the Infringing Shields, but each of the Defendants also blatantly copied Plaintiff's well-known Design – in the same exact colors as Plaintiff. (The Infringing Shields and their product packaging and advertising are collectively referred to herein as "Infringing Products").

59.    Defendants, and each of them, have also repeatedly used and, upon information and belief, continue to use, photographs and videos of Plaintiff's business affiliates, endorsers, and/or friends (without their or Plaintiff's knowledge or permission) that display Plaintiff's Shield, the Copyright, Trademarks and/or Trade Dress.

///

///

60.     In addition, upon information and belief, each of the Defendants have directly pursued, and continue to pursue, the customers of Plaintiff and/or Plaintiff's authorized retailers with targeted Internet and social media advertisements.

61.     Upon information and belief, to date, each of the Defendants continue to advertise, display, and sell the Infringing Products and continues to infringe upon Plaintiff's Copyright, Trademarks, and Trade Dress.

62.     Upon information and belief, Defendants, and each of them, have and, to date, still are manufacturing, advertising, promoting, displaying, shipping, offering for sale, selling, and/or distributing Infringing Products at least throughout the United States, including but not limited to within this judicial district.

63.     Upon information and belief, Defendants, and each of them, have and continue to infringe upon and dilute Plaintiff's Copyright, Trademarks, and Trade Dress, at least throughout the United States, including but not limited to within this judicial district.

64.     Upon information and belief, Defendants are engaging in such unlawful conduct in an attempt to unlawfully benefit from Plaintiff's fame and success. Each of the Defendants have willfully and unlawfully diverted Plaintiff's current and prospective clients to their own respective benefits and misled and confused customers to believe that each of the respective Defendants are affiliated with Plaintiff.

65.     As a result of each Defendants' wrongful conduct as described herein, Defendants have caused and, unless restrained, will continue to cause great and irreparable injury to Plaintiff, Plaintiff's business, and to the goodwill and reputation of Plaintiff.

66.     Therefore, Plaintiff had no choice but to file this lawsuit to prevent further harm to its business and seek damages, injunctive relief, and other appropriate remedies.

///

# FIRST CLAIM FOR RELIEF

## (For Copyright Infringement - Against All Defendants)

67.     Plaintiff hereby realleges and incorporates the allegations contained in the preceding paragraphs as if fully set forth herein.

68.     Plaintiff is informed and believes and thereon alleges that Defendants, and each of them, infringed Plaintiff's Copyrights by creating, making and/or developing directly infringing and/or derivative works from the Shield, Design, and/or Packaging and by producing, manufacturing, importing, distributing and/or selling Infringing Products.

69.     Due to each of Defendants' acts of infringement, Plaintiff has suffered substantial damages to its business in an amount to be established at trial.

70.     Due to each of Defendants' acts of infringement, Plaintiff has suffered general and special damages in an amount to be established at trial.

71.     Due to Defendants' acts of copyright infringement as alleged herein, Defendants, and each of them, have obtained direct and indirect profits they would not otherwise have realized but for their infringement. As such, Plaintiff is entitled to disgorgement of Defendants' profits directly and indirectly attributable to Defendants' infringement in an amount to be established at trial.

72.     Upon information and belief, each of the Defendants also began such activities although they were fully aware of Plaintiff's superior rights. Therefore, each of  Defendants' respective acts of copyright infringement as alleged above were, and continue to be, willful, intentional and malicious, subjecting Defendants, and each of them, to liability for statutory damages under Section 504(c)(2) of the Copyright Act in the sum of up to one hundred fifty thousand dollars ($150,000) per infringement.   Further, Defendants, and each of their willfful and intentional misappropriation and/or infringement renders Defendants, and each of them, liable for statutory damages as described herein. Within the time permitted by law, Plaintiff

will make its election between actual damages and statutory damages. Plaintiff is also entitled to preliminary and permanent injunctive relief.

## SECOND CLAIM FOR RELIEF

**(For Vicarious and/or Contributory Copyright Infringement**

**- Against All Defendants)**

73.    Plaintiff hereby realleges and incorporates the allegations contained in the preceding paragraphs as if fully set forth herein.

74.    Plaintiff is informed and believes and thereon alleges that Defendants, and each of them, knowingly induced, participated in, aided and abetted in and profited from the illegal reproduction and/or subsequent sales of Infringing Products as alleged hereinabove.

75.    Plaintiff is informed and believes and thereon alleges that Defendants, and each of them, are vicariously liable for the infringements alleged herein because they had the right and ability to supervise the infringing conduct and because they had a direct financial interest in the infringing conduct.

76.    By reason of the Defendants', and each of their, acts of contributory infringement as alleged above, Plaintiff has suffered and will continue to suffer substantial damages to his business in an amount to be established at trial, as well as additional general and special damages in an amount to be established at trial.

77.    Due to Defendants' acts of copyright infringement as alleged herein, Defendants, and each of them, have obtained direct and indirect profits they would not otherwise have realized but for their infringement. As such, Plaintiff is entitled to disgorgement of Defendants' profits directly and indirectly attributable to Defendants' infringement, in an amount to be established at trial.

78.    Upon information and belief, Defendants also began such activities although they were fully aware of Plaintiff's superior rights. Therefore, Defendants' acts of copyright infringement as alleged above were, and continue to be, willful, intentional and malicious, subjecting Defendants, and each of them, to liability for

statutory damages under Section 504(c)(2) of the Copyright Act in the sum of up to one hundred fifty thousand dollars ($150,000) per infringement.    Further, Defendants', and each of their, willful and intentional misappropriation and/or infringement renders Defendants, and each of them, liable for statutory damages as described herein. Within the time permitted by law, Plaintiff will make its election between actual damages and statutory damages. Plaintiff is also entitled to preliminary and permanent injunctive relief.

### THIRD CLAIM FOR RELIEF

### (Trademark Infringement - Against All Defendants)

79.    Plaintiff hereby realleges and incorporates the allegations contained in the preceding paragraphs as if fully set forth herein.

80.    Since at least as early as February 2019, Plaintiff has continuously used its Trademarks, and the variations thereof, in commerce throughout all of the United States, including this judicial district, in connection with and as source identifiers for Plaintiff's goods and services.

81.    As a result, Plaintiff has established common law trademark rights in its Trademarks.

82.    Defendants, and each of them, have made use of Plaintiff's Trademarks, and variations thereof, without Plaintiff's consent, knowledge, or authority.

83.    Each of Defendants' unauthorized use of Plaintiff's Trademarks in connection with Defendants' respective marketing and sales of the Infringing Products constitutes infringement of Plaintiff's common law trademark rights, misappropriates the valuable goodwill developed by Plaintiff in the Trademarks, and is likely to cause (and has actually caused) confusion, mistake, and/or deception among the relevant public as to the source of each Defendants' goods and services or their affiliation, sponsorship or approval of each Defendants' Infringing Products by Plaintiff and/or Plaintiff's business affiliates, advertisers, and retailers.

84.    Each of Defendants' respective acts constitute the use in commerce of false designations of origin and false and/or misleading descriptions or representations, tending to describe and/or represent, in a false or misleading fashion, Defendants' respective products as those of Plaintiff's.

85.    Plaintiff has earlier established, superior rights in its Trademarks, and variations thereof.

86.    Defendants, and each of them, are aware of Plaintiff's use and corresponding rights in the Trademarks. Each of Defendants' aforementioned acts constitute the use of Plaintiff's exact Trademarks, or variations thereof, for identical or substantially similar goods and services, amounting to willful infringement of Plaintiff's trademark rights.

87.    Defendants' respective acts of willful infringement of Plaintiff's rights in the Trademarks, and variations thereof, have caused and, unless restrained, will continue to cause great and irreparable injury to Plaintiff, Plaintiff's business, Plaintiff's business relationship with its retailers, and to the goodwill and reputation of Plaintiff, leaving Plaintiff no adequate remedy at law.

88.    Defendants' respective acts are the proximate cause of such injury and damage.

89.    By reason of the foregoing, Plaintiff is entitled to preliminary and permanent injunctive relief against Defendants, and anyone acting in concert with Defendants, to restrain further acts of infringement of Plaintiff's rights and, after trial, to recover any damages proven to have been caused by reason of Defendants' aforesaid acts of infringement and any enhanced damages justified by the willful and intentional nature of such acts.

## FOURTH CLAIM FOR RELIEF

### (Trademark Dilution - Against All Defendants)

90.    Plaintiff hereby realleges and incorporates the allegations contained in the preceding paragraphs as if fully set forth herein.

91.    Plaintiffs' Trademarks, and variations thereof, are famous and distinctive and have garnered widespread publicity and public recognition in California and nationwide.

92.    Defendants' respective use of the Trademarks, and variations thereof, in connection with the manufacture, advertisement, promotion, display, shipment, offering for sale, sale, and distribution of the Infringing Products began after the Trademarks became well-known, distinctive, and famous in California and throughout the United States.

93.    Each of Defendants' respective unlawful use of the Trademarks, and variations thereof, dilutes the distinctive quality of the Trademarks and lessens the capacity of the Trademarks to serve as a unique identifier of Plaintiff's products, in violation of 15 U.S.C. § 1125.

94.     Upon information and belief, Defendants, and each of them, willfully intended to trade on the reputation and goodwill associated with the Trademarks and to cause its dilution.

95.    Defendants' respective dilution has caused and, unless restrained and enjoined by this Court, will persist and will continue to cause great and irreparable injury to Plaintiff, Plaintiff's business, and to the goodwill and reputation of Plaintiff, leaving Plaintiff no adequate remedy at law.

96.    Defendants' respective acts are the proximate cause of such injury and damage.

97.    By reason of the foregoing, Plaintiff is entitled to preliminary and permanent injunctive relief against Defendants, and anyone acting in concert with Defendants, to restrain further acts of infringement of Plaintiff's rights and, after trial, to recover any damages proven to have been caused by reason of Defendant's aforesaid acts of dilution and any enhanced damages justified by the willful and intentional nature of such acts.

///

## **FIFTH CLAIM FOR RELIEF**

### **(Trade Dress Infringement - Against All Defendants)**

98.    Plaintiff hereby realleges and incorporates the allegations contained in the preceding paragraphs as if fully set forth herein.

99.    Since at least as early as February 2019, Plaintiff has continuously used its Trade Dress, including but not limited to, the trade dress in Plaintiff's Shield and Plaintiff's product packaging, in commerce throughout all of the United States including this judicial district, in connection with and as a source identifier for Plaintiff's goods and services.

100.   As a result, Plaintiff has established common law trade dress rights in its Trade Dress.

101.   Plaintiff's Trade Dress is inherently distinctive and/or has acquired distinctiveness and secondary meaning resulting from the great recognition and attention that Plaintiff's Shield has attained and the frequent celebrity posts of photographs and videos displaying Plaintiff's Trade Dress.

102.   Defendants, and each of them, have made use of Plaintiff's Trade Dress, without Plaintiff's consent, knowledge, or authority.

103.   Defendants' respective unauthorized use of Plaintiff's Trade Dress in connection with their respective marketing and sales of the Infringing Products constitutes infringement of Plaintiff's common law trade dress rights, misappropriates the valuable goodwill developed by Plaintiff in the Trade Dress, and is likely to cause (and has actually caused) confusion, mistake, and/or deception among the relevant public as to the source of each of Defendants' goods and services or their affiliation, sponsorship or approval of each of Defendants' Infringing Products by Plaintiff and/or Plaintiff's business affiliates, advertisers, and retailers.

104.   Defendants' respective acts constitute the use in commerce of false designations of origin and false and/or misleading descriptions or representations, tending to describe and/or represent, in a false or misleading fashion, Defendants'

respective products as those of Plaintiff's, resulting in blurring and/or tarnishment of Plaintiffs' Trade Dress.

105. Plaintiff has earlier established, superior rights in its Trade Dress.

106. Defendants, and each of them, are aware of Plaintiff's use and corresponding rights in the Trade Dress. Each of Defendants' aforementioned acts constitute the use of Plaintiff's Trade Dress for identical or substantially similar goods and services, amounting to willful infringement of Plaintiff's trade dress rights.

107. Defendants' respective acts of willful infringement of Plaintiff's rights in the Trade Dress have caused and, unless restrained, will continue to cause great and irreparable injury to Plaintiff, Plaintiff's business, Plaintiff's business relationship with its retailers, and to the goodwill and reputation of Plaintiff, leaving Plaintiff no adequate remedy at law.

108. Defendants' respective acts are the proximate cause of such injury and damage.

109. By reason of the foregoing, Plaintiff is entitled to preliminary and permanent injunctive relief against Defendants, and anyone acting in concert with Defendants, to restrain further acts of infringement of Plaintiff's rights and, after trial, to recover any damages proven to have been caused by reason of Defendant's aforesaid acts of infringement and any enhanced damages justified by the willful and intentional nature of such acts.

## **SIXTH CAUSE OF ACTION**

(Trade Dress Dilution under California Business & Professions Code Section 14247

– Against All Defendants)

110. Plaintiff hereby realleges and incorporates the allegations contained in the preceding paragraphs as if fully set forth herein.

111. Plaintiffs' Trade Dress is famous and distinctive and have garnered

widespread publicity and public recognition in California and nationwide.

112.    Defendants' respective use of the Trade Dress in connection with the manufacture, advertisement, promotion, display, shipment, offering for sale, sale, and distribution of the Infringing Products began after the Trade Dress became well-known, distinctive, and famous in California and throughout the United States.

113.    Defendants' respective unlawful use of the Trade Dress dilutes the distinctive quality of the Trade Dress and lessens the capacity of the Trade Dress to serve as a unique identifier of Plaintiff's products, in violation of Cal. Bus. & Prof. Code § 14247.

114.    Upon information and belief, Defendants, and each of them, willfully intended to trade on the reputation and goodwill associated with the Trade Dress and to cause dilution of the Trade Dress.

115.    Defendants' respective dilution has caused and, unless restrained and enjoined by this Court, will persist and will continue to cause great and irreparable injury to Plaintiff, Plaintiff's business, and to the goodwill and reputation of Plaintiff, leaving Plaintiff no adequate remedy at law.

116.    Defendants' respective acts are the proximate cause of such injury and damage.

117.    By reason of the foregoing, Plaintiff is entitled to preliminary and permanent injunctive relief against Defendants, and anyone acting in concert with Defendants, to restrain further acts of infringement of Plaintiff's rights and, after trial, to recover any damages proven to have been caused by reason of Defendant's aforesaid acts of dilution and any enhanced damages justified by the willful and intentional nature of such acts.

## SEVENTH CAUSE OF ACTION

(Unfair Competition, California Business & Professions Code § 17200

– Against All Defendants)

118.    Plaintiff hereby realleges and incorporates the allegations contained in the preceding paragraphs as if fully set forth herein.

119.    Defendants' respective conduct, as alleged herein, is unlawful and Defendants engaged in such conduct without privilege, justification or excuse.

120.    Defendants' respective misconduct constitutes an "unlawful, unfair or fraudulent business act or practice" in violation of California Business & Professions Code § 17200 et seq.

121.    Defendants' respective conduct has directly and proximately caused and will continue to cause Plaintiff substantial and irreparable injury, including customer confusion, injury to its reputation, and diminution in value of its intellectual property, and unless restrained, will continue to seriously and irreparably impair further the value of Plaintiffs Trademarks and Trade Dress, for which there is no adequate remedy at law.

122.    In light of the foregoing, Plaintiff is entitled to an injunction under Cal. Bus. & Prof. Code §§ 17200 et seq. restraining Defendants from engaging in further such unlawful conduct, as well as restitution of those amounts unlawfully obtained by Defendants through their wrongful conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully demands the following relief against the Vanity Mask Defendants, jointly and severally, the Lux Light Therapy Defendants, jointly and severally, the Lulu Youth Defendants, jointly and severally, the Social Skin Co. Defendants, jointly and severally, the Luma Aesthetics Defendants, jointly and severally, Trygloo, and Therashield, with respect to each claim for relief:

a.    That Defendants and their respective owners, officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with them, be preliminarily and then permanently restrained and enjoined from:

i.    Manufacturing, advertising, promoting, displaying, shipping, offering for sale, selling, or distributing the Infringing Products;

ii.    Manufacturing, advertising, promoting, displaying, shipping, offering for sale, selling, or distributing any other face shield or face mask bearing Plaintiff's Copyrights, Trademarks, or Trade

Dress, or any other copy, reproduction, or colorable imitation thereof, or any other mark or trade dress that is confusingly similar thereto; and

    iii.  Doing any other act or thing that is likely to cause persons to believe that Defendants' goods or commercial activities originate with, or are licensed, sponsored, or authorized by, Plaintiff;

b.    That Defendants, their respective agents and servants be enjoined from selling Infringing Products, or otherwise infringing Plaintiff's Copyrights, Trademarks, or Trade Dress;

c.    That Plaintiff be awarded all profits of the Defendants plus all losses of Plaintiff, the exact sum to be proven at the time of trial, or, if elected before final judgment, statutory damages as available under the Copyright Act, 17 U.S.C. § 101 et seq.;

d.    Compensatory, punitive, exemplary, consequential, incidental, and/or special damages, in an amount to be determined at trial;

e.    Restitution;

f.    Pre-judgment and post-judgment interest;

g.    Costs of suit incurred herein, including attorney's fees and expenses; and

h.    Such other and further relief as the Court deems just and proper.

Dated: January 13, 2021      **NOVIAN & NOVIAN, LLP**

                                By:    /s/ Farhad Novian
                                     FARHAD NOVIAN
                                     SHARON RAMINFARD
                                     MICHAEL O'BRIEN

                                     Attorneys for Plaintiff
                                     DMH Aesthetics, LLC